

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

NOV 30 1998  **GS**

Michael N. Milby, Clerk of Court

| | |
|---|---|
| GRADY'S AMERICAN GRILL, LP, § § Plaintiff, § § v. § § MICHAEL K. REILLY and MKR § INVESTMENTS, L.P., § § Defendants. § | Case No. H-98-4015 |

# COMPLAINT

For its complaint against Michael K. Reilly ("Reilly") and MKR Investments, L.P. ("MKR"), Grady's American Grill, LP ("Grady's") says:

## PARTIES AND JURISDICTION

1. Grady's is a limited partnership organized under the laws of the State of Texas with its principal place of business in the State of Texas. The general partner of Grady's is Grady's American Grill Restaurant Corporation ("GAGRC"). GAGRC is a corporation organized under the law of the State of Indiana with its principal place of business in the State of Indiana. The limited partner of Grady's is GAGHC, Inc., a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Delaware. Pursuant to 28 U.S.C. § 1332, Grady's is a citizen of the States of Texas, Indiana, and Delaware.

2. Reilly is an individual resident of the State of Illinois who may be served with this Complaint at 104 Burr Ridge Club Drive, Burr Ridge, Illinois 60521. Pursuant to 28 U.S.C. § 1332, Reilly is a citizen of the State of Illinois.

3. MKR is a limited partnership organized under the laws of the State of Illinois whose general partner is Reilly, which may be served with this Complaint by serving its general partner, Michael K. Reilly at 104 Burr Ridge Club Drive, Burr Ridge, Illinois 60521. Pursuant to 28 U.S.C. § 1332 MKR is a citizen of the State of Illinois.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because this is a civil action where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

## BACKGROUND FACTS

5. At all times relevant to this Complaint and until October 27, 1998, BFBC Ltd., a limited partnership organized under the laws of the State of Florida (the "Borrower") operated certain retail stores located in Florida under franchise agreements with Bruegger's Franchise Corporation (the "Franchisor").

6. On or about April 15, 1997, Texas Commerce Bank National Association ("Texas Commerce") made a loan and committed to provide certain financial accommodations to Borrower. Texas Commerce made the loan and the commitment (the "Loan") pursuant to a certain Credit Agreement dated as of April 15, 1997, by and between BFBC Ltd. and Texas Commerce Bank National Association (the "Credit Agreement"). Under the Credit Agreement, Borrower borrowed a total principal amount of $4,200,000 from Texas Commerce. Hereafter the Borrower's obligation to repay that principal amount with interest and to pay certain fees, expenses and other amounts

under the Credit Agreement will be referred to as the "Obligations". Pursuant to the Credit Agreement, the Borrower executed a promissory note to further evidence the Obligations (the "Note").

7. In connection with the Loan, the general partner of the Borrower, BFBC Company, a Florida corporation, and each of five principal shareholders of BFBC Company, including Reilly, executed a Principal Guaranty (collectively the "Principal Guaranties"). By a Principal Guaranty, each of the principal guarantors "absolutely and unconditionally" guaranteed to Texas Commerce and its successors and assigns the prompt payment of all of the Obligations. In addition, MKR executed and delivered to Texas Commerce a certain Subordination Agreement (the "Subordination Agreement"), by which MKR agreed, among other things, to subordinate payment of a certain loan MKR had made to Borrower to the repayment of the Obligations.

8. Borrower's Obligations were secured by security interests and liens against collateral granted under a Security Agreement and the collateral assignment of certain leases (the "Security Documents"). The Credit Agreement, Note, Principal Guaranties, Security Documents and the Subordination Agreement are included in the instruments and documents that were executed and delivered to Texas Commerce in connection with the Loan and are referred to in the Credit Agreement and in this complaint as the "Loan Documents".

9. Quality Dining Inc. ("QDI") is an Indiana corporation. At the time of the Closing of the Loan, QDI was an affiliate of the Franchisor and is now an affiliate of the plaintiff, Grady's. In connection with the Loan and as an accommodation to Borrower QDI executed a "Guaranty". By the terms of the Guaranty QDI agreed that upon maturity of the Loan by default or

otherwise that it would either (1) pay the Obligations or (2) buy the Loan and all of the Loan Documents from Texas Commerce or its successor.

10. By merger Chase Bank of Texas, N.A. ("Chase") became the successor of Texas Commerce and the holder of the Loan and the Loan Documents.

11. By a letter dated October 30, 1998, Chase declared that the Loan is in default, and by letter dated November 10, 1998, Chase notified Borrower, the Principal Guarantors and QDI that all of the Obligations are due and payable, and demanded payment of the Obligations from Borrower under the Note and from Reilly under the Principal Guaranty executed by Reilly (the "Reilly Guaranty"). The amount due under the Note, including principal and interest and costs is $4,294,350.83.

12. On November 24, 1998, QDI purchased the Loan and all of the Loan Documents from Chase, thus extinguishing its separate guaranty. As a result QDI became the holder of the Loan and the Loan Documents, including the Reilly Guaranty and the Subordination Agreement.

13. On November 30, 1998, QDI transferred the Loan and the Loan Documents to Grady's for good and valuable consideration. Grady's is now the holder of the Loan and the Loan Documents, including the Reilly Guaranty and the Subordination Agreement.

## COUNT I - ACTION ON REILLY GUARANTY

14. A true and accurate copy of the Reilly Guaranty is attached hereto as Exhibit "1" and is incorporated herein by reference.

15. Despite demand Reilly has refused to pay the Obligations that he guaranteed "absolutely and unconditionally" pursuant to the Reilly Guaranty. The Obligations guaranteed by Reilly in the amount of at least $4,294,350.83 are now due and payable by Reilly to Grady's.

16. All conditions precedent to the claim of Grady's against Reilly under the Reilly Guaranty have been performed, have occurred or have been excused.

## COUNT II - ACTION AGAINST MKR

17. Grady's incorporates by reference the allegations of paragraphs 1 through 16 of Count I of the complaint.

18. A true and accurate copy of the Subordination Agreement is attached hereto as Exhibit "2."

19. MKR breached the Subordination Agreement by wrongfully accepting from Borrower repayment of an indebtedness in the principal amount of approximately $820,000 that constituted Subordinated Indebtedness. Pursuant to the terms of the Subordination Agreement MKR holds the amount of the Subordinated Indebtedness that the Borrower repaid (the "Repayment Amount") in trust for the benefit of Grady's to be applied and against the Obligations. MKR is obligated to remit to Grady's the Repayment Amount.

20. All conditions precedent to the claim of Grady's against MKR under the Subordination Agreement have been performed, have occurred, or have been excused.

## PRAYER FOR RELIEF

WHEREFORE, Grady's asks the Court to (1) grant judgment to Grady's and against Reilly under Count I of this complaint for the amount of all of the Obligations and Grady's reasonable attorneys' fees, costs and expenses incurred in connection with this action, (2) grant judgment to

Grady's and against MKR under Count II of this complaint for the Repayment Amount and declaring that MKR holds the Repayment Amount in trust for the benefit of Grady's and (3) grant Grady's all other relief that is appropriate.

Dated: November 30, 1998.

Respectfully submitted,

By: _____
Robert L. Levy
State Bar No.: 12268660
**Haynes and Boone, L.L.P.**
1000 Louisiana, Suite 4300
Houston, Texas 77002
(713) 547-2000
(713) 547-2600 (Facsimile)

Attorney-in-Charge for Plaintiff,
Grady's American Grill, LP

OF COUNSEL:
James M. Carr
**Baker & Daniels**
300 North Meridian Street
Suite 2700
Indianapolis, Indiana 46204-1782
(317) 237-0300
(317) 237-1000 (Facsimile)

ClibPDF - www.fastio.com

# PRINCIPAL GUARANTY

## Dated as of April 15, 1997

This Principal Guaranty is made by Michael K. Reilly, an individual resident of the State of Illinois, (the "Guarantor") in favor of TEXAS COMMERCE BANK NATIONAL ASSOCIATION, (together with its successors and assigns, the "Bank"). Capitalized terms used herein and not defined herein shall have the meanings assigned thereto in the hereinafter defined Credit Agreement.

For valuable consideration, the Guarantor agrees as follows:

SECTION 1. BASIC TERMS.

    (a) In consideration of any loan or other financial accommodation heretofore, now or hereafter at any time made or given by the Bank to BFBC LTD., a limited partnership organized under the laws of the State of Florida (the "Borrower"), the Guarantor hereby guarantees absolutely and unconditionally the prompt payment when due, whether at maturity, by declaration, by demand or otherwise, at any and all times thereafter, and as otherwise set forth herein, of all indebtedness and other liabilities and obligations of the Borrower to the Bank, direct or indirect, absolute or contingent, due or to become due, now or hereafter existing, under a certain Credit Agreement of even date herewith by and between the Borrower and the Bank (as it may be amended, supplemented or modified from time to time, the "Credit Agreement") and the other Loan Documents (as defined in the Credit Agreement), including without limitation all principal, interest, fees, indemnities and other obligations with respect thereto (all such indebtedness and other liabilities and obligations being hereinafter collectively called the "Obligations").

    (b) In addition, the Guarantor agrees to pay or reimburse the Bank for all costs and expenses of preparing, seeking advice in regard to, enforcing and preserving its rights under this Guaranty, and any document or instrument executed in connection herewith (including legal fees and reasonable time charges of attorneys and paralegals, whether in or out of court, in original or appellate proceedings or in bankruptcy).

    (c) The Guaranty shall remain in full force and effect, notwithstanding the fact that from time to time there may be no outstanding Obligations, until (i) the Obligations and all amounts payable hereunder have been fully paid, and (ii) all commitments and obligations of the Bank under the Credit Agreement to extend credit to the Borrower have terminated.

SECTION 2. EVENTS REQUIRING PAYMENT. Each of the following shall be an "Event Requiring Payment":

(a) <u>Nonpayment</u>. Failure to pay, when and as due or demanded, any of the Obligations within ten (10) days after notice from the Bank to the Guarantor of the Borrower's failure to pay any such Obligations when and as due or demanded; or

(b) <u>Default under Credit Agreement</u>. Any Event of Default under the Credit Agreement shall have occurred and be continuing; or

(c) <u>Warranties</u>. Any representation, warranty, schedule, certificate, financial statement, report, notice or other writing furnished by or on behalf of the Guarantor to the Bank is false or misleading in any material respect on the date as of which the facts therein set forth are stated or certified; or

(d) <u>Litigation</u>. Any suit, action or other proceeding (judicial or administrative) commenced against the Guarantor or with respect to any assets of the Guarantor shall threaten to have a material adverse effect on the ability of the Guarantor to make future payments, provided that the commencement of any such suit, action or other proceeding shall not constitute an Event Requiring Payment under this Guaranty so long as such suit, action or other proceeding is diligently contested in good faith by the Guarantor; or

(e) <u>Noncompliance with this Guaranty</u>. The Guarantor shall fail to comply with any provision hereof, which failure does not otherwise constitute an Event Requiring Payment, and such failure shall continue for thirty (30) days after notice thereof to the Guarantor by the Bank, provided that if, at the expiration of such thirty (30) day period, the Guarantor is, in the reasonable opinion of the Bank, taking and continues to take reasonable steps to cure the Event Requiring Payment in a diligent manner, then no Event Requiring Payment shall be deemed to have occurred under this Section 2(e); or

(f) <u>Guaranty</u>. This Guaranty shall be repudiated or become unenforceable or incapable of performance by the Guarantor; or

(g) <u>Bankruptcy - Filing of Petition</u>. The Guarantor shall file a petition or answer or consent seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal, state or foreign bankruptcy law or other similar law, or the Guarantor shall consent to the institution of proceedings thereunder or the filing of any such petition or to the appointment or taking possession of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official of the Guarantor; or

(h) <u>Bankruptcy - Entry of Order for Relief</u>. There shall be entered a decree or order by a court constituting an order for relief in respect of the Guarantor under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal, state or foreign bankruptcy law or other similar law, or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official of the Guarantor or of any substantial part of their respective properties, or ordering the winding-up of or liquidation of the affairs of the Guarantor; or

2

ClibPDF - www.fastio.com

(i) <u>Insolvency</u>. The Guarantor shall become insolvent, generally shall fail or be unable to pay his debts as they mature, or shall admit in writing his inability to pay his debts as they mature, or shall make a general assignment for the benefit of creditors, shall enter into any composition or similar agreement, or shall suspend the transaction of all or a substantial portion of his usual business; or

(j) <u>Cross-Default</u>. There shall occur any default or event of default, or any event which might become such with notice or the passage of time or both, or any similar event, or any event which requires the prepayment of borrowed money in an aggregate principal amount of $10,000 or more, or the acceleration of the maturity thereof, under the terms of any evidence of indebtedness or other agreement issued or assumed or entered into by the Guarantor or under the terms of any indenture, agreement or instrument under which any such evidence of indebtedness or other agreement is issued, assumed, secured or guaranteed, and such event shall continue beyond any applicable period of grace.

SECTION 3. <u>PAYMENT REQUIREMENT</u>. Upon the occurrence of any Event Requiring Payment, the Guarantor agrees to pay to the Bank, immediately upon the Bank's demand therefor, the full amount which would be payable hereunder by the Guarantor if all Obligations were then due and payable. Further, upon the occurrence of an Event Requiring Payment specified in Sections 2(g)-(h), the full amount which would be payable hereunder if all Obligations were then due and payable shall be immediately and automatically due and payable by the Guarantor without action of any kind on the part of the Bank.

SECTION 4. <u>REINSTATEMENT</u>. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of the Obligations, or any part thereof, is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, the Guarantor, any other guarantor of the Obligations or otherwise, all as though such payment to the Bank had not been made.

SECTION 5. <u>OBLIGATIONS UNCONDITIONAL; WAIVER OF DEFENSES</u>. No fact or circumstance whatsoever which might at law or equity constitute a discharge or release of, or defense to the obligations of, a guarantor or surety shall limit or affect any obligations of the Guarantor under this Guaranty or any document or instrument executed in connection herewith. Without limiting the generality of the foregoing:

(a) The Bank may at any time and from time to time, without notice to the Guarantor, take any or all of the following actions without affecting or impairing the liability of the Guarantor on this Guaranty:

(i) renew or extend time of payment of the Obligations;

(ii) accept, substitute, release or surrender any security for the Obligations;

(iii) accept other guarantors; and

3

ClibPDF - www.fastio.com

      (iv)  release the Borrower or any other guarantor from its obligations in connection with the Obligations.

    (b)  No delay in enforcing payment of the Obligations, nor any amendment, waiver, change, or modification of any terms of any instrument which evidences or is given in connection with the Obligations, shall release the Guarantor from any obligation hereunder. The obligations of the Guarantor under this Guaranty are and shall be individual, primary, continuing, unconditional and absolute (notwithstanding that at any time or from time to time all of the obligations guaranteed may have been paid in full), irrespective of the value, genuineness, regularity, validity or enforceability of any documents or instruments respecting or evidencing the Obligations. In order to hold the Guarantor liable hereunder, there shall be no obligation on the part of the Bank, at any time, to resort for payment to the Borrower, any other guarantor or any other guaranty or to any security for the Obligations, this Guaranty or any other guaranty. The Bank shall have the right to enforce this Guaranty irrespective of whether or not other proceedings or steps are being taken against any property securing the Obligations or any other party primarily or secondarily liable on any of the Obligations.

    (c)  The Guarantor waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of any loans made, extensions granted or other action taken in reliance hereon, and all demands and notices of any kind in connection with this Guaranty or the Obligations.

    SECTION 6.  <u>DEBT SUBORDINATION</u>. The Guarantor hereby subordinates to the Obligations any claim or right to receive payment of any or all indebtedness of the Borrower to the Guarantor whether now existing or hereafter created or arising, direct or indirect, absolute or contingent, due or to become due (all such, the "Subordinated Obligations"), and agrees that the Bank's claim and right to receive payment in full of the Obligations shall be prior and superior. The Guarantor agrees not to accept payment of the Subordinated Obligations, including interest thereon, or any part thereof, or to enforce any security interest or accept proceeds of any security therefor, whether from the Borrower or any other person or entity, until such time as all the Obligations and all amounts payable hereunder shall have been paid in full.

    SECTION 7.  <u>WAIVER OF SUBROGATION</u>. Notwithstanding and without limiting any other provision of this Guaranty, until such time as all obligations hereunder are paid in full and all commitments and obligations of the Bank under the Credit Agreement to extend credit to the Borrower have terminated, the Guarantor waives any claim or other right that the Guarantor might now have or hereafter acquire against Borrower or any other person primarily or contingently liable on the Obligations (including without limitation any maker, indorser or guarantor) that arises from the existence or performance of the Guarantor's obligations under this Guaranty, including without limitation any right of subrogation, reimbursement, exoneration, contribution or indemnification, or any right of participation in any claim or remedy of the Bank against Borrower or any security for the Obligations which the Bank now has or hereafter acquires, however arising.

4

SECTION 8. **APPLICATION OF FUNDS.** Any and all payments upon the Obligations made by the Borrower, by the Guarantor, or by any other person, and the proceeds of any and all security for any of the Obligations may be applied by the Bank upon such of the items of the Obligations as it may determine.

SECTION 9. **PARTICIPATIONS.** Upon notice to the Guarantor, the Bank may sell, assign, transfer or grant participations in all or any of the Obligations. In such event each and every immediate and successive assignee, transferee or holder of or participant in all or any of the Obligations shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits, but the Bank shall have an unimpaired right, prior and superior to that of any assignee, transferee or holder to enforce this Guaranty for the benefit of the Bank or any such participant, as to so much of the Obligations as it has not sold, assigned or transferred.

SECTION 10. **REPRESENTATIONS AND WARRANTIES.** The Guarantor represents and warrants to the Bank that:

(a) The Guarantor is an individual resident of the state identified in the first paragraph of this Guaranty.

(b) The Guarantor has reviewed the terms of this Guaranty with counsel and understands the effect of this Guaranty. This Guaranty and all documents and instruments executed by the Guarantor in connection herewith are individual obligations of the Guarantor enforceable against the Guarantor in accordance with the terms hereof.

(c) The Guarantor has filed or cause to be filed all federal, state and local tax returns (including information returns) which, to the knowledge of the Guarantor are required to be filed, and have paid or have caused to be paid all taxes as shown on such returns or on any assessment received by them, to the extent that such taxes have become due (except for current taxes not delinquent and taxes being contested in good faith and by appropriate proceedings and as to which no foreclosure, distraint, sale or similar proceedings have been commenced).

(d) No litigation, arbitration proceedings or governmental proceedings are pending or threatened against the Guarantor which would (singly or in the aggregate), if adversely determined, have a material and adverse effect on the financial condition or prospects of the Guarantor.

SECTION 11. **MISCELLANEOUS.**

(a) The Bank may, by written notice to the Guarantor, at any time and from time to time, waive any Event Requiring Payment, which shall be for such period and subject to such conditions as shall be specified in any such notice. In the case of any such waiver, the Bank and the Guarantor shall be restored to their former position and rights hereunder, and any Event Requiring Payment so waived shall be deemed to be cured and not continuing; but no such

5

waiver shall extend to or impair any right consequent thereon or to any subsequent or other Event Requiring Payment.

(b) All notices, requests and demands to or upon the respective parties hereto shall be deemed to have been given or made when sent by certified or registered mail, postage prepaid, addressed:

(i) if to the Bank to: Texas Commerce Bank National Association, 712 Main Street, Houston, Texas 77002-8059, Attention: Michael Costello,

(ii) if to the Guarantor, to:

Michael K. Reilly
104 Burr Ridge Club Drive
Burr Ridge, IL 60521,

or to such other addresses as may be hereafter designated in writing by the respective parties hereto.

(c) No failure to exercise, and no delay in exercising, on the part of the Bank of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies of the Bank herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(d) This Guaranty shall, upon execution and delivery by the Guarantor, become effective and shall be binding upon and inure to the benefit of the Guarantor and the Bank and their respective successors and assigns, except that the Guarantor may not transfer or assign any of his rights or interest hereunder without the prior written consent of the Bank.

(e) Captions in this Guaranty are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Guaranty.

(f) Unless the context requires otherwise, wherever used herein the singular shall include the plural and vice versa, and the use of one gender shall denote the others where appropriate.

(g) This Guaranty, and any document or instrument executed in connection herewith shall be governed by, and construed and interpreted in accordance with, the internal laws of the State of Texas, and shall be deemed to have been executed in the State of Texas.

(h) THE GUARANTOR HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN HOUSTON, TEXAS, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE GUARANTOR AND THE BANK PERTAINING TO THIS GUARANTY OR

ANY OF THE OTHER LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS, PROVIDED THAT THE BANK AND THE GUARANTOR ACKNOWLEDGES THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF HOUSTON, TEXAS AND, PROVIDED THAT NOTHING IN THIS GUARANTY SHALL BE DEEMED OR OPERATE TO PRECLUDE THE BANK FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF THE BANK. THE GUARANTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND THE GUARANTOR HEREBY WAIVES ANY OBJECTION WHICH THE GUARANTOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINTS AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE GUARANTOR AT THE ADDRESS SET FORTH IN SECTION 11(b) OF THIS GUARANTY AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF THE GUARANTOR'S ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER DEPOSIT IN THE U.S. MAILS, PROPER POSTAGE PREPAID.

*/s/ Michael K. Reilly*
Michael K. Reilly

STATE OF Florida       )
                       ) SS
COUNTY OF Martin       )

The foregoing instrument was acknowledged before me this 15th day of April, 1997 by Michael K. Reilly who is personally known to me.

Given under my hand and official seal this 15th day of April, 1997.

_Elizabeth A. Arsenault_
Notary Public

Commission Expires: _____

ELIZABETH G. ARSENAULT
COMMISSION # CC623654
EXPIRES FEB 23, 2001
BONDED THROUGH
ATLANTIC BONDING CO., INC.

8

ClibPDF - www.fastio.com

## SUBORDINATION AGREEMENT

Texas Commerce Bank National Association
712 Main Street
Houston, Texas  77002-8059

Ladies and Gentlemen:

      In order to induce you to lend money or extend credit to BFBC, Ltd., a limited partnership organized under the laws of the State of Florida (the "Borrower") and in consideration of your so doing either now or at any time in the future, the undersigned agrees to and hereby does subordinate his claim and right to receive payment of any and all indebtedness of the Borrower to him, whether now existing or hereafter created (hereinafter called "Subordinated Indebtedness"), to your claim and right to receive payment in full of any and all indebtedness of the Borrower to you, direct or contingent, whether now existing or hereafter created (hereinafter called the "Superior Indebtedness") and hereby agrees not to accept payment of the Subordinated Indebtedness, including interest thereon, or any part thereof or to accept any security therefor or to assign its claim therefor or any part thereof to any other person until such time as all Superior Indebtedness shall have been paid in full; except that, subject to the provisions of the following paragraph hereof, the undersigned may receive payments of principal of and interest on the Subordinated Indebtedness as long as there has been no default in payment of principal or interest on the Superior Indebtedness and, immediately after such payment and after giving effect thereto, no Event of Default or Default (each as defined in the Credit Agreement dated as of April 15, 1997 between the Borrower and you (as amended, restated, replaced or modified, the "Credit Agreement")) exists.

      In the event of any distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of the assets of the Borrower or the proceeds thereof, in whatever form to creditors of the Borrower or upon any indebtedness of the Borrower occurring by reason of the liquidation, dissolution or other winding up of the Borrower or by reason of any execution sale, receivership, insolvency or bankruptcy proceedings or assignments for the benefit of creditors or proceedings for reorganization or readjustment of the Borrower or its properties, then and in such event the Superior Indebtedness shall first be paid in full in cash before any payment is made upon the Subordinated Indebtedness, and any payment or distribution of any kind or character either in cash, property or securities which shall be payable or deliverable upon or in respect of the Subordinated Indebtedness and interest thereon shall be paid or delivered direct to you for application in payment of the amounts then due on the Superior Indebtedness until the Superior Indebtedness shall have been paid in full.

      In order to enable you to enforce your rights under the preceding paragraph hereof in any action or proceedings, you are hereby irrevocably authorized and empowered in your discretion to make and present for or on behalf of the undersigned such proof of claim or claims against the Borrower on account of the Subordinated Indebtedness as you may deem expedient and proper;

to vote such claims in any such proceedings; to receive and collect any and all payments or disbursements made thereon in whatever form the same may be paid or issued; and to apply same on account of the Superior Indebtedness. The undersigned agrees to and does hereby assign all such claims to you, and the undersigned further agrees to execute such instruments as may be required by you to enable you to enforce any and all such claims and collect any and all payments or disbursements that may be made on account of the Subordinated Indebtedness.

Should any payment or distribution be received by the undersigned on the Subordinated Indebtedness in contravention of the terms of this Subordination Agreement while any Superior Indebtedness is outstanding, said payment or distribution shall be held in trust for you and immediately remitted to you.

No renewal or extension of time for payment of the Superior Indebtedness and no release or surrender of any security for the Superior Indebtedness and no delay in enforcement of payment of the Superior Indebtedness or in the enforcement of this Subordination Agreement and no delay or omission in exercising any right or power under the Superior Indebtedness or under this Subordination Agreement shall in any manner impair or affect your rights hereunder. The undersigned waives notice of the creation, existence, extension and renewal of the Superior Indebtedness.

Upon your request the undersigned agrees to cause all Subordinated Indebtedness to be evidenced by a note or notes of the Borrower. If the Subordinated Indebtedness is evidenced by note(s) of the Borrower, the undersigned agrees to mark such note(s) with the following legend:

> "This note is subordinated to all indebtedness now or hereafter owed by maker to Texas Commerce Bank National Association as provided in Subordination Agreement dated as of April 15, 1997."

If the Subordinated Indebtedness is not evidenced by notes, the undersigned agrees to mark its books and records indicating this subordination.

The undersigned warrants and represents to you that he has not assigned, sold, or otherwise transferred any note or agreement respecting or evidencing the Subordinated Indebtedness or any interest therein to any person or entity and that he will make no such assignment, sale, or transfer until and unless (before the same occurs) any such assignee, buyer, or transferee agrees, in writing, in form acceptable to you, to be bound by the provisions of this Subordination Agreement.

The undersigned hereby specifically subordinates any liens, mortgages, security interests, pledges, or other encumbrances securing the Subordinated Indebtedness to those securing the Superior Indebtedness and agrees that until the Superior Indebtedness is paid in full the undersigned will not in any way, manner, or respect, assert or seek to enforce by legal proceedings or other proceedings or actions any such liens, mortgages, security interests, pledges, or other encumbrances. The undersigned agrees that this subordination and the priority

established hereby shall apply regardless of the time or order of attachment or perfection of such security interests, pledges, or mortgages or the granting or failure to give notice thereof.

The undersigned hereby agrees that if at any time or times he notifies the Borrower that the Borrower is in default in respect of the Subordinated Indebtedness, he shall concurrently give notice thereof to you.

The undersigned hereby consents to the Borrower entering into the Credit Agreement, making the borrowings thereunder and granting to you the liens and security interests in the Collateral (as defined in the Credit Agreement).

Wherever used herein, the singular shall include the plural and the plural shall include the singular, and the use of one gender shall denote the other where appropriate.

This Subordination Agreement shall remain in full force and binding upon the undersigned, his heirs, administrators, executors, successors, and assigns, notwithstanding the death of the undersigned, until the Superior Indebtedness shall have been paid in full. This Subordination Agreement shall inure to the benefit of you and your successors and assigns.

This Subordination Agreement and the rights and obligations of the parties hereunder shall be governed by, and construed and interpreted in accordance with, the laws of the State of Texas. THE UNDERSIGNED HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION AND VENUE OF COURTS HAVING SITUS IN HOUSTON, TEXAS, AND AGREES THAT ANY LITIGATION INVOLVING THIS SUBORDINATION AGREEMENT (INCLUDING WITHOUT LIMITATION ANCILLARY CLAIMS) AT YOUR SOLE OPTION MAY BE CONDUCTED IN SUCH COURTS. THE UNDERSIGNED HEREBY WAIVES ANY RIGHT OR CLAIM HE MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY SUIT, ACTION, OR OTHER PROCEEDING BROUGHT AGAINST HIM BY YOU IN ACCORDANCE WITH THIS PARAGRAPH OR TO CLAIM THAT ANY SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Dated as of this 15th day of April, 1997.

MKR INVESTMENTS, L.P.

By: _____
Michael K. Reilly, General Partner

     Notice of the above Subordination Agreement is hereby accepted, this 15th day of April, 1997. The undersigned agrees not to make any payments in contravention of the terms of such Subordination Agreement. In the event of any violation of the terms of the Subordination Agreement, any indebtedness due to Texas Commerce Bank National Association (together with its successors and assigns, the "Bank"), from the undersigned shall, at the option of the Bank, become immediately due and payable.

BFBC, LTD.

By: BFBC Company, its general partner

By: _____
Title: _____President_____

-4-

20183943.2